A turnpike act, incorporating a company, with a clause vesting the road, on a certain event, in the people, is a public act, ut semb. The mere subscribing to stock in a Turnpike Co. where a part of the amount of each share is ordered to be paid at that time, gives no interest in the stock if the money be not paid, and the company cannot bring an action for the amount, as it is nudum pactum. A clause of forfeiture of shares subscribed, takes away the right of suing for them, or money ordered to be paid upon them.

## Thomas Jenkins, against the President, Directors, and Company of the Union Turnpike Road.

ERROR, on the judgment of the supreme court in a suit between the same parties, in which the now plaintiff was defendant below, and the now defendants, plaintiffs. The case was, as reported in 1 Caines's New-York Reports, 381. Upon the decision there pronounced, the plaintiff assigned the following errors. 1st, That the action being founded upon the act entitled, " An act to establish a turnpike corporation, " for improving the road from New-Lebanon to the city of " Hudson," passed the 3d of April, 1801, as set forth in the declaration, it is not alleged, nor in any way stated, that the said Thomas Jenkins, at the time of subscribing, or at any other time, paid to the said commissioners ten dollars, or any other sum of money, on each, or any share of the said stock, by which the said Thomas Jenkins would become entitled to the said shares. 2d, That it does not appear by the said declaration, that the parties were mutually bound to each other; but that the said commissioners were at liberty, at any time before the surrendering up to the said company the said subscription, to erase the name of the plaintiff from the said subscriptions, and to receive others in the place thereof; nor does it appear that the said commissioners, or the said president and directors, ever did any act before the commencing the action below, by which they were bound, or in any shape liable to the said Thomas Jenkins, for the said stock, by virtue of the said subscription. 3d, That it does not appear in the said declaration, that there was any determination of the president, directors, and company of the said turnpike, for the payment of the said several sums of money by the said stockholders, according to the conditions and terms of the said subscriptions. 4th, That the promises set forth in the said declaration are void, for want of consideration. 5th, General errors. On these grounds it was insisted the judgment ought to be reversed.

The defendants contended, it ought to be affirmed for the following reasons. 1st, Because it does not appear on the record, that ten dollars was by the act required to be paid on each share subscribed, and, as it does not appear, it cannot be

assigned for error. 2d, Allowing it might be so assigned, as the obligation prescribed by the act is to the president, directors, and company, for the whole amount of twenty-five dollars upon each share, and as the payment of ten dollars upon each share was for the benefit and use of the company, the non-payment of this latter sum cannot be assigned by the plaintiff as an objection to the payment of the former, because he would then be permitted to take advantage of his own wrong. 3d, Because the commissioners were authorized only to receive, and not erase subscriptions, and by admitting the subscription, were bound to consider the plaintiff a stockholder, until they should declare his shares forfeited; and by their calls upon him for his instalments, they acknowledged his right to call on them for dividends. 4th, Because the president and directors are the only organs, through or by which the affairs of the company can be conducted. 5th, Because the subscription passed to the plaintiff an interest and right in the stock of the company, by virtue of which he was entitled to dividends, and created therefore a consideration sufficient to support his promise, for breach of which, the action was brought.

Woodworth, Att'y-General, for the plaintiff. Against going into the first error we have assigned, the defendants insist, that as the circumstances we there rely on do not appear on the record, we cannot avail ourselves of them, though they are specified and required by the act of incorporation, under which the present suit was brought. To decide on the force of this objection, we must inquire whether this be a private or a public act. If it be the latter, then the court must take notice of it, and we may avail ourselves of all its provisions. It is not necessary to plead a general statute, 19 Vin. Abr. Letter C. pl. 8. And every statute is general which may apply to every man. Ibid. in notis. This is clearly such a statute, for every man may be a stockholder, and every man may use the road, and must pay. So every act which concerns the King, though the matter of it relate to individual persons or things, is a public statute, of which the judges ex officio must take notice. Therefore the 2 Ph. & M. concerning the trade of a dyer, is held to be a public act, because the forfeiture goes to the King. Ibid. pl. 11. in notis. Within this principle, the act in question must be a public act, for, after a certain pe-

*ALBANY, 1804.*

Thos. Jenkins,
v.
Union Turnpike Co.

ALBANY,
1804.

Thos. Jenkins,
v.
Union Turn-
pike Co.

riod *, by the 12th section, " the right, interest, and proper-
" ty of the said road shall be vested in the people of this
" state." Also, by the act ordering the publication of the
laws †, the persons appointed to revise them, were directed
as a matter of " duty," to insert in a separate volume, the ti--
tles of acts of a partial or local nature.. In executing this di-
rection, they have, in the 2d vol. Rev. Laws, 518, placed un-
der a particular title of " special ‡," many laws ; but amongst
them this is not inserted, and therefore they must have consi-
dered it a public statute. The court below have acted on
this as a public law, and referred to it in their decision, in
consequence of the counsel now opposed to us, having in their
argument treated it as a general statute. On the face of this
law, it will not support the present suit. It prescribes a pecu-
liar remedy, on failure of the party subscribing for stock. His
shares are to be forfeited. It was not therefore the intention
of the legislature to permit an action at law. The loss of the
ten dollars ordered to be paid, to raise a fund of $20,000 to
commence the road, and the forfeiture of the share, was the
punishment inflicted by the act for a non-compliance with
the subscription engagement. The subscription created no
contract, and gave no rights. It was merely to ascertain the
stock taken up. But at all events, to acquire a right in that
stock, the payment of $10 was necessary, and ought to have
been averred. Without payment, the contract was nudum
pactum, as it could not be enforced against the corporation.
To give a right, two acts were made necessary, subscription
and payment. A compliance with one, gave no title to de-
mand the stock, and unless both parties were bound, there
was no contract in law. Cooke v. Oxley, 3 D. & E. 653.
The consideration must be apparent on the record, and set
forth in the declaration. That the promise is stated to be in
writing, is not sufficient § to show a consideration. Rann v.
Hughes, 7 D. & E. 350, over-ruling in this point, Pillans v.
Van Meirop. Wherever one thing is to be the consideration
of another, though there be mutual promises, performance
must be averred and proved. Callonel v. Briggs, 1 Salk. 112.
The payment of the $10 ought, therefore, to have been ex-
pressly stated, as it was the sole ground of right against the
company. For, unless it was by this means acquired, the
payment of the $10 would have been without consideration.

* After pay-
ment of prin-
cipal and in-
terest at the
rate of 14 per
cent.
† 1 Rev. Laws,
620.
‡ 2 Rev. Laws,
518.

§ See the note
in 1 N.Y.T.R.
386.

The payment of these $10, was a condition precedent; therefore, till that was performed, no right could accrue to Jenkins. 1 Salk. 172 *. Goodison v. Nunn, 4 D. & E. 761. The declaration therefore should show a tender and refusal of the stock. The same doctrine is found in 1 Vin. 338. tit. Actions of Assumpsit. (Z. 3.) It is not enough to state the demand of $5, on an order by the president and directors. This does not evince that the plaintiff had the stock; and if he had not, he was not obliged to pay the order. The not setting forth a due consideration, is matter of substance, ever available of, and not cured by, a verdict. Foster v. Smith, Cro. Car. 31. 1 Sid. 182 †. Cro. Jac. 503 ‡. Doug. 679 §. With respect to the order of the president and directors, it is sufficient to observe, that delegated authorities must be strictly pursued. The power is given to the president, directors, and company, and though only the two former may be the active parties, the order should have been in the names of all. The defendants relied in the court below, on the contract of the now plaintiff; let them therefore confine themselves to it, and show the breach within its letter.

Williams, and W. W. Van Ness, contra. This is an action upon an express written contract, subscribed by the plaintiff in error. Its form is prescribed by the act incorporating the company. Its terms are explicit and intelligible, and the legal obligation imposed by it, equally clear. The plaintiff, conceiving that sufficient matter in law did not appear upon the record in this cause, to support the judgment of the court below, has assigned four specific causes of error, to which is added the general assignment. In order more clearly to comprehend the force of these objections, it will be proper to read the contract on which the action is founded, as stated in the declaration. " We, whose names are hereunto subscrib-
" ed, do, for ourselves, and *our legal representatives*, promise
" to pay to the president, directors, and company of the Union
" Turnpike Road, the sum of twenty-five dollars for every
" share of stock in the said company, set opposite to our respec-
" tive names, in such manner and proportion, and at such time
" and place, as shall be determined by the said president, di-
" rectors, and company." Before examining the errors assigned, it may be necessary to state what may be assigned for error, and whether that which is contained in the first error

*Margin notes:*

ALBANY, 1804.

Thos. Jenkins, v. Union Turnpike Co.

* Thorpe v. Thorpe.

† Cooke v. Samburne.
‡ Lenneret v. Rivet. Where two considerations are declared on, performance of both must be alleged; and if one averment be good, and the other bad, judgment on a general verdict will be arrested.
§ Rushton v. Aspinall.

ALBANY,
1804.

Thos. Jenkins,
v.
Union Turn-
pike Co.

\* Margaret
Marshall's
case.

can be the subject of such assignment: that is, whether mat-
ter dehors the record can be assigned for error, and whether
the matter now assigned does appear on its face. The errors
all point to supposed defects in the declaration. But if we
can show, that what is now assigned, could not have been
urged in arrest of judgment, then the court will not reverse
the judgment. It does not appear, *from the record*, that the
act contains one word of payment to be made at the time of
subscribing. It alleges only, that the plaintiff did subscribe;
not that any sum of money was to be paid. Therefore, no-
thing respecting non-payment can be assigned for error, unless
permitted to search the act and travel out of the record. The
rule is, nothing extrinsic, nothing which does not appear on
the face of the record, can be assigned as error. It is laid
down, in 3 Black. Com. 407, " that a writ of error lies only
" upon matter of law arising upon the face of the proceed-
" ings." So, 3 Woodes. 359, 60, " if either party be dissa-
" tisfied with the judgment of the court pronounced, either
" on demurrer or arrest of judgment, (which, as already men-
" tioned, must relate to some matter apparent upon the face
" of the record) the record may be removed, by writ of error,
" into a superior tribunal, in order to the reversal or affirmance
" of the former judgment." A further reason why the first
error assigned cannot be maintained, is, that it discloses mat-
ter which ought to have been pleaded; and it is a general
rule, that what may be taken advantage of by plea, cannot be
assigned for error. Com. Di. tit. Pleader, (3 B. 16.) Cro.
Eliz. 4.\*. In the present case, the declaration did not state
the act as ordering payment of the $10. The now plaintiff,
to avail himself of it, ought to have disclosed it by way of plea,
and then we might have traversed, or demurred, or taken is-
sue on the payment. It was enough for us to set forth only
so much of the act as made for ourselves. A declaration
need recite no more of a statute than is pertinent to the ac-
tion. Com. Di. tit. Pleader, (2 S. 3.) Ibid. Action upon
Statute I. The residue should have come from the now
plaintiff. In Potter v. Read, Cro. Jac. 139, a second error
assigned, was, " because the plaintiff founded his action upon
" the statute, and recites only such part thereof, whereby he
" would charge the defendant generally, whether he hath as-
" sets or not; and it appears, by the other parts of the act

" pleaded by the defendant, that he is not chargeable, unless " he hath assets of the money received upon the sale of the " lands, or woods, or debts of Sir T. G. so, the statute is not " fully recited by the plaintiff. Sed non allocatur, for the " plaintiff reciting what made for his advantage, the defen- " dant may plead the residue if he will." The same doc- trine is found in Cro. Jac. 506 *, and in Cowp. 665 †. That this is a public act, we deny on the authority of the act cited by the Attorney-General, 1 Vol. Rev. Laws, 620. By the first section, all the public acts are directed to be contained in the first volume of the laws. This act is not there. It is within the description of a private act. Com. Di. title Par- liament, (R. 7.) 4 Rep. 76 ‡. A Turnpike act is no more a public statute, than one incorporating a bank. As to the clause, by which it is enacted, that on a certain event the road shall go to the people, it means no more than that it shall become a common road again. But allowing that the decla- ration is not so full as it might have been, it may be ques- tioned whether any advantage can be taken of it now. After verdict, many imperfections are cured, which would, if urged before, have been fatal. 3 Black. Com. 394. 1 Sell. Prac. 523. 2 Wills. 261 §. 3 Burr. 1725, Weston v. Mason. For then, every thing will be supposed proved, which must at the trial have been established, to entitle to a recovery, 1 Wills. 255 **. On the point of consideration, there can be no doubt; mutual promises are sufficient in law to create good consider- ations. These, by the subscribing the note, were raised. On the one hand the plaintiff promised to pay, and on the other, the company promised to receive him as a stockholder. Sup- pose a man sells a horse for $100, and $10 to be paid down; in a suit by the vendor, can the vendee say the contract is an- nihilated, because he did not pay the $10? The words legal representatives evince, that the payment was not to be simul- taneous with the subscription. The legislature intended the bargain and contract to be complete, on the mutual promises resulting from the subscribing. The clause empowering to cause to be forfeited the shares of any defaulter, was intro- duced to give a new and superadded right to the corporation, which was not incident to their nature. It was a cumulative remedy. But this does not abrogate their inherent right to sue on all contracts made with them. A lessor may have a

* Bennus v. Guyldley.
† Dundass v. Weymouth.

‡ Holland's case.

§ English v. Burnell and Ingham.

** Bull v. Steward.

remedy on his covenant, without losing his right of distrain-ing, or re-entry. So that possessing one remedy, is no argu-ment for losing all others. The order made by the company is stated according to the only manner in which it was possi-ble to have been made; that is, by the president and direc-tors. They were the constituted agents of the company, and to state their acts in the line of that agency, is to state the acts of the company.

Harison, in reply. The act furnishes no one word to autho-rize the idea that the subscriptions are recoverable by suit. In actions founded on statutes, the rule is, that where no re-medy is given, the common law will interpose and afford one; but where the statute prescribes a remedy, no other can be resorted to. Saying the remedy is cumulative, is a violation of all principles. On the point of consideration it is manifest, that had Jenkins brought an action against the president, di-rectors, and company, for his proportion of the toll, they might have replied the non-payment of the $10, and it would have been conclusive. If so, they were not bound to him, and consequently he was not bound to them. This, then, is a clear nudum pactum ex quo non oritur actio. Cooke v. Oxley, al-ready cited. Two acts were necessary; subscribing and pay-ing. To take this case out of the general rule, it ought to be shown, that the shares vested by the subscription. Latham v. Barber, 6 D. & E. 67. Allowing however the contract to have been good, the judgment must be reversed; for the order set forth by the pleadings is not in conformity to the contract relied on. It is to pay according to the order of the president, directors, and company; the order is by the president and di-rectors. If I engage to pay according to the order of A. and B. you must show that A. and B. made an order. If not, a defective title is shown, not an actual title defectively set forth. This is a fatal circumstance, and not cured by verdict. Rushton v. Aspinall. Doug. 679. 2 Lev. 152 *, and the cases cited by the Attorney-General. The company have not pur-sued their power of making the order according to the words of the act. It is a delegated authority, and must be strictly pursued. Fronting v. Small, 2 Ld. Ray. 1408. 2 Bac. Abr. 7, 8. This also is conclusive against the judgments.

Lansing, Chancellor. The first point to be determined, is, the class to which the act of the legislature, on which this action

has been brought, is to be assigned—If a public act, every part ALBANY, 1804.
of it is, in legal intendment, in the knowledge of the court, *as*
*the general law of the land.* If a private act, it can only be so Thos. Jenkins, v. Union Turnpike Co.
far attended to, as the parties, by their pleadings, have made
it an object of judicial connusance. Amongst the English
legal maxims, we find, *that every statute that concerns the king,* 10 Co. 57.
4 Rep.77. Hol-
land's case.
8 Rep. 28.138.
Hob. 227.
*and every statute that relates to all the subjects of the realm,*
are public statutes. All highways, as contradistinguished
from *private* ways, are common to all the people of the state,
and concern them generally. A new creation of a highway,
or a new modification of an ancient way, as in the case of a
turnpike, does not affect the mode of using it generally. It is
still a highway, in the preservation of which, all citizens are
interested. It contributes essentially to their convenience.
The toll is merely exactable for its construction, maintenance,
and repair. In all other respects, the right of using it as a
highway, is unimpaired. The people of the state, who, in
their collective capacity, have succeeded to the rights of so-
vereignty, are also entitled to the reversion, after the sums
charged on the Turnpike are satisfied. These considerations
rather incline me to think, that this statute ought to be consi-
dered as a public act; but, for the purpose of this argument,
I do not suppose it necessary to be very nice, in discriminat-
ing between public and private acts. For, though it is true,
that private acts must be specially pleaded, the plaintiffs in
the court below, by their allegations, have so far placed the
act, on which this action is founded, before the court, as to
enable them to examine the statute, to discover whether the
ground on which they relied can sustain their action. They
have referred to the statute by its title, *which is the name or* 6 Mod. 62.
Mills v. Wil-
kins.
*description given to it by its makers,* and though the plaintiff
need not recite more of the statute than is necessary to sup- Freeman,428.
Shaftsbury v.
Digby.
port his action; and though it is laid down, that a misrecital,
which does not go to the ground of the action, is helped after
verdict by the statute of Jeofails; yet it is requisite, that he Sty. 231.
should show that the ground of his action is consonant to the
provisions of the statute, to which he has thus generally refer-
red in pleading, and so far forth as it is material to show the
ground of his action, he has given it the property of a public
statute. This is clearly distinguishable from showing an ex-
ception by pleading. In that case the plaintiff only shows

his right of recovery generally, and the defendant must, by pleading, bring himself within the exception. In that case, the record will always consist with the statute. In the other, an action may be sustained, which, from a mere comparison of the record with the statute, will show a recovery without right. I mean now to consider, 1. Whether the contract in question is a valid one? 2dly. Whether an action is sustainable by the defendants for the sums required from the stockholders? From the record it appears, that commissioners were appointed by the statute to perform certain duties, particularly prescribed. They were to *receive* subscriptions, and *to receive*, for the benefit of the defendants, $10 on each share of the stock of their Company. The plaintiff subscribed, but it does not appear that he paid. At the time these steps were taken, *the Corporation*, described in the act, was not in existence. It was incapable of contracting. The acts to be performed by the commissioners were merely preparatory to its creation. To give effect to their acts, their power must be strictly pursued. They had no discretion, or latitude of action; their line of conduct was marked with the utmost precision. They were directed to exact from the persons, who were to be admitted members of the Corporation, both *subscription and payment*, as a condition precedent to their admission. If they omitted either *to subscribe*, or *to pay*, they did not come within the terms of admission. If so, the bare act of subscription was wholly nugatory. The subsrcibers, who were to meet, could only constitute themselves such, within the intent of the statute, by a compliance with the terms prescribed by it. When the Corporation was organized, the Directors might dispense with the exaction of the first payment. But if they did so, there was no ground for extending the doctrine of relation to the transaction, so as to bring it within the rules applying to mutual contracts. For, if the doctrine of relation is to be applied, it will carry it to a period beyond the existence of the body politic with whom the contract is supposed to have been made. If the defendants had affirmed the contract, in all the time intermediate *the affirmance and the subscription*, the contract had been suspended. Now, it is a well established rule, that, to give effect to mutual contracts, a unity of time, as to their commencement, so as to bind both parties from the same point

of time, is essential. It did not constitute a contract; for, the contract, if any, was, " I agree to pay [$25 for every share I acquire by this subscription," and *if none were acquired, none were to be paid for.* This result would render it unnecessary to examine the second point; but I shall cursorily remark, that if the subscription was efficient in the first instance, I have no doubt but that the defendants might resort to their action, as a cumulative remedy, and that they had their election either to sue, or exact the forfeiture prescribed by the statute. This is an affirmative statute; it prescribes a form of contract, which, if so entered into as to bind the parties, at the time of consummation, without any aid from the statute by other express provision, would entitle the defendants to maintain their action. It is *a maxim* in the common law, that a statute made in the affirmative, without any negative expressed or implied, doth not take away the common law. Therefore the plaintiff may either have his remedy by the common law, or upon the statute. For the reasons given, I am of opinion, that the judgment in this case ought to be reversed on the first point.

L'Hommedieu, Senator. The act establishing this corporation directs, that every subscriber shall, at the time of subscribing, pay unto either of the commissioners the sum of ten dollars, for each share so subscribed. The material question in this case is, whether a subscriber, refusing to pay the money subscribed, is liable to an action for the money subscribed; or, whether forfeiture be not all the punishment. This act, being made for a particular purpose, ought to be strictly pursued; and as there is no remedy given, except the forfeiture, that forfeiture is the only thing the corporation can insist upon. In this case, the subscriber refused to pay the money the law declared should be paid at the time of subscribing. If this was not done, it was a nudum pactum, or void compact. The plaintiff, by this, forfeited his right to be a stockholder; and, in case the stock had rose, the company would have been under no obligation to have considered him as a stockholder. This is, I believe, the first instance of a suit's being brought on a subscription to a turnpike or canal corporation, on account of a refusal to pay the subscription money. This shows the general sense of the community, in respect to such subscriptions. Many instances of this kind in the canal company, in-

ALBANY,
1804.

Thos. Jenkins,
v.
Union Turnpike Co.

2 Ins. 200.

Thos. Jenkins,
v.
Union Turn-
pike Co.

surance companies, banking companies, and others, have taken place; and if the doctrine of subscribers' being liable to pay up the shares in such navigation companies to which they have been subscribed, be once entertained, it would be ruinous to many; contrary to the intent and meaning of the parties, and the obvious construction of the law. The determination of this court will settle the rule in regard to corporations which are formed, or similar ones which may be created, as to bringing suits on subscriptions. If the defendants are suffered to recover, it will open a wide door for numberless suits, if the corporations are disposed to bring them. By the contrary rule, no inconvenience will accrue. In this case before us, we have no facts to show why the subscriber refused to pay the money subscribed by him. But whatever reason he had for his conduct, I am of opinion he had a right so to do, by the fair construction of the act; and that the judgment of the supreme court be reversed.

Judgment reversed, the court holding no action would lie.