WARWICK RAILROAD COMPANY *vs.* SHUBAEL CADY.

After the grant of a charter to a railroad company, providing that the capital stock should not exceed 2,000 shares of $100 each, subscriptions were received as follows:—

"Providence, June, 1873. We, the subscribers, severally agree to and with the Warwick Railroad Company, that we will take the number of shares of one hundred dollars ($100) each in the capital stock of said company, set opposite our respective names, under the provisions of its charter, and that we will pay for the same in such manner as the board of directors may, under the charter, direct."

In an action by the corporation against a defaulting subscriber:

*Held,* that the contract was good, and the subscriber liable, notwithstanding the whole capital was not subscribed for.

*Held,* further, that the word *share* did not imply a proportion of a definite capital.

*Held,* further, that subscribing for a share was equivalent to subscribing for $100.

This case distinguished from those cases in which a definite capital was fixed, or a definite proportion or sum was required as a condition precedent to organization, or in which conditional subscriptions were made.

PLAINTIFF's petition for a new trial.

Assumpsit against the defendant, who was a subscriber to the following agreement:—

"PROVIDENCE, *June,* 1873.

"We, the subscribers, severally agree to and with the Warwick Railroad Company, that we will take the number of shares of one hundred dollars ($100) each in the capital stock of said company, set opposite our respective names, under the provisions of its charter, and that we will pay for the same in such manner as the board of directors may, under the charter, direct."

At the trial in this court before a jury it appeared in evidence that the full amount of the plaintiff's capital stock, as limited by the charter, and fixed by a vote of the corporation, had not been subscribed, whereupon the plaintiff was nonsuited by direction of the presiding judge.

*Samuel Currey, J. P. Fitch & William W. Douglas,* for plaintiff. The defendant's subscription, as well as the first assessment by the directors, were both prior in point of time to the vote of the corporation fixing the amount of the stock. The directors' record produced and read at the trial shows that the first assessment was made March 23, 1874, payable April 4, 1874; and the stockholders' record, also produced and read at the trial, shows that the stockholders' meeting, at which they voted that the capital stock should be $200,000, was held April 15, 1874.

The twofold reference to the charter in the subscription incorporates the provisions of that instrument into the subscription contract, at least as far as relates to the capital stock and assessments on the subscribers. Section *two* of the charter provides that " the capital stock should not exceed two thousand shares of one hundred dollars each ; " and section *three* provides for " such equal assessments from time to time on all the shares as the directors shall deem expedient and necessary in the progress of the work."

The defendant's contract, then, was that he would take twenty shares of $100 each in a capital stock not exceeding two thousand shares of $100 each, and would pay for the same as ordered by the directors in equal assessments on all the shares actually subscribed for or taken by himself and others in the venture. These were the only conditions : *First*. That the shares subscribed for should not exceed two thousand ; and *second*. That the assessments on all the shares subscribed for *out of the two thousand* should be equal.

I. It appearing in evidence at the trial that the shares subscribed for did not exceed the capital limited by the charter (2,000), and that like assessments were made by the directors on all the other shares actually subscribed for as on those of the defendant, it must follow that the defendant is justly liable on his subscription, and the judgment of nonsuit was erroneous.

Express conditions in a contract exclude the implication of others not expressed. *Inclusio unius exclusio alterius* is a maxim of the law as old as the law itself, because it is a maxim of all right reasoning. The defendant's agreement plainly was to take twenty shares out of any number that should be subscribed, — more or less — within the charter limitation of not exceeding two thousand.

For the court to annex a condition to such an agreement, which is not only not expressed, but obviously excluded by what is expressed, would be to substitute a contract for the parties other than that made by themselves.

II. Except in cases where the charter or act of the legislature fixes the capital stock of a corporation at a specific sum or number of shares of a given amount, or imperatively requires that the corporation itself or its directors shall determine the amount, —

a subscription to the full amount agreed on by the stockholders, without such requirement of the charter or act of the legislature, is not a condition precedent to valid assessments, or the right of recovery upon a subscription. *Hamilton & Deansville Plank Road Co.* v. *Rice*, 7 Barb. S. C. 158; *Rensselaer & Washington Plank Road Co.* v. *Wetsel*, 21 Barb. S. C. 56; *Schenectady & Saratoga Plank Road Co.* v. *Thatcher*, 11 N. Y. 102; *Kennebec & Portland Railroad Co.* v. *Jarvis*, 34 Me. 360.

These four cases appear to be decisive of the question of the plaintiff's right to recover of the defendant on his subscription, notwithstanding that the whole number of shares, voted by the stockholders as the basis of plaintiff's capital stock, have not been taken. If so, the nonsuit must be set aside and a new trial granted. We subjoin, however, the following New York cases, in which it does not appear whether all the stock in the respective corporations was subscribed for or not. No allegation that it was or was not appears to have been made in the pleadings, and no proof of the fact appears to have been required or given, and no reference appears to have been made to that point either by counsel or the court, although in several of the cases it affirmatively appears that the amount of stock had been definitely fixed. *Slee* v. *Bloom*, 19 Johns. Rep. 456; *Mason* v. *Petty*, 2 Sandf. Ch. 257; *L. Ontario & N. Y. R. R. Co.* v. *Mason*, 16 N. Y. 451; *Poughkeepsie & Salt Point Plank Road* v. *Griffin*, 21 Barb. S. C. 454; *Small* v. *Herkimer Manuf. Co.* 2 N. Y. 330; *Spear* v. *Crawford*, 14 Wend. 20; *Abbott* v. *Aspinwall*, 26 Barb. S. C. 202; *Dayton* v. *Borst*, 7 Bosw. 115; *Goshen & M. Turnpike Co.* v. *Hurtin*, 9 Johns. Rep. 217; *Herkimer Manuf. Co.* v. *Small*, 21 Wend. 273.

The New York reports are full of such cases, but these will suffice to show that in the great corporation-creating State of New York the courts do not hold that where the charter does not fix the amount of stock, it must be presumed that the legislature intended that the corporation should fix it, nor that when it is fixed by the corporation, it is necessary to have it all subscribed for before assessments can be made.

On the other hand, when such a condition appears in the New York cases as attached to the contract, either by the act of the legislature creating the corporation, or in the subscription paper

itself, both the courts and the bar recognize it. In such cases, it is set out in the pleadings, or appears in the evidence, or is noticed by the judge trying the cause, and is found in the reported cases. *Sagory* v. *Dubois*, 3 Sandf. Ch. 466; *Troy Turnpike & R. R. Co.* v. *McChesney*, 21 Wend. 296.

When, therefore, we find in the New York reported corporation cases nothing said about this condition, that the whole of the stock must be subscribed, we are not to infer that such silence is the result of inadvertency or mistake.

Nor is the doctrine of the foregoing cases to be regarded as at war with the cases cited by the defendant's counsel at the trial. *Salem Mill Dam Co.* v. *Ropes*, 6 Pick. 23; *Central Turnpike Co.* v. *Valentine*, 10 Pick. 142; *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 277; *Old Town & Lincoln R. R. Co.* v. *Veazie*, 39 Me. 571.

These were all cases in which the stock was definitely fixed or limited by the charter in such precise and imperative way that the courts held the limitation to be a controlling element in the stock subscription; in which respect these cases are entirely distinguishable from the case at bar.

Neither will the two following cases, also cited at the trial, when carefully examined, be found to be authorities against the doctrine for which we contend. In the first, *Worcester & Nashua R. R. Co.* v. *Hinds*, 8 Cush. 110, it will be found that the charter, while prescribing that the stock should not be more than a certain amount, imperatively required that that amount should be determined by the directors. The language is, " shall be determined by the directors." In *Somerset & Kennebec R. R. Co.* v. *Cushing*, 45 Me. 524, the subscription to the stock had this peculiarity, that the subscribers " would pay all assessments on their shares that shall be made in pursuance of the by-laws of the company." Prior to the date of the subscriptions, the corporation had adopted a by-law fixing the capital stock at 7,000 shares, the whole of which had not been subscribed. The subscription being subsequent to the by-law, and the promise being, in express terms, to pay only " in pursuance of the by-law," the court held that the promise was conditioned on all the shares being subscribed for, as fixed by the by-law. And it is to be noticed here that the court, referring to its own prior decision,

34 Maine, 360, distinguishes the two cases from each other, just as they differ in the form of the subscription.

III. But, whatever may be thought of the business propriety or legal effect of having a definite amount of stock fixed by the voluntary act of the corporation, as distinguished from the act of the legislature, it is plainly incompetent for the stockholders, after having subscribed to an indefinite amount of stock, to invalidate their subscription by simply coming together and voting that the stock shall consist of a definite amount.

As it requires two parties to make a contract, so does it require the consent of both the same parties to its dissolution. The contract of subscription in this case recognizes two parties to it in express terms. The language is, " We, the subscribers, *severally* agree to and with the Warwick Railroad Co.," &c. It is not simply that they agree to and with each other, but that they severally agree to and with this plaintiff corporation. It must be conceded on the authority of all the cases, that the assessment was valid and reciprocally binding until the act of the subscribers fixed the capital stock at an amount exceeding the amount of the subscriptions; to hold that it was vacated and not binding after this act of the subscribers — only one of the parties to it — would be as absurd in the law as it would be repugnant to honesty and good morals. But besides this fundamental objection to the competency of the subscribers (stockholders they could not be unless their subscriptions were binding) to nullify their contract by their own act, it would seem to be more than doubtful whether the stockholders in this corporation could have anything to do with fixing the capital stock. This would rather seem to be exclusively the province of the directors after the subscriptions were made. Section 2 of the charter, immediately following the provision that the capital stock " shall not exceed two thousand shares," goes on to say, " the immediate government and direction of the affairs of the company shall be vested in five directors;" and section 3 provides that " the president and directors, for the time being, are hereby authorized and empowered to exercise all the powers herein granted to the corporation." To say the least of it, this reads much as if the exercise of all the faculties and powers of the corporation was exclusively vested in the board of directors. In any view of the question,

the concurrence of the president and directors in the vote of the stockholders, fixing the amount of the capital, was necessary, in order to give that vote any validity or effect, especially the effect of the financial ruin of the corporation.

IV. Even though it could be made to appear that the defendant's subscription was on the condition that the maximum amount of stock which the corporation could hold should be subscribed for before valid assessments could be made, or that there was irregularity in the organization of the company ; yet the defendant has waived both the condition and irregularity by his frequent presence at and participation in the business meetings of the company. *N. H. Central R. R. Co.* v. *Johnson,* 30 N. H. 390 and 407 ; *Centre & K. Turnpike Co.* v. *M'Conaby,* 16 S. & R. 140 ; *Chester Glass Manuf. Co.* v. *Dewey,* 16 Mass. 94 ; *Dutchess Cotton Manuf. Co.* v. *Davis,* 14 John. Rep. 232 ; *Little* v. *O'Brien,* 9 Mass. 423 ; *Hager's Town Turnpike* v. *Creeger,* 5 H. & J. 122 ; *Union Turnpike Co.* v. *Jenkins,* 1 Cai. R. 381 ; *Clark* v. *Navigation Co.* 10 Watts, 664 ; *Sheffield & Manchester Railway Co.* v. *Woodcock,* 7 M. & W. 578 ; *Chittenham Railway Co.* v. *Daniel,* 2 Q. B. 281.

It is therefore contended that the defendant is estopped from denying the validity of his subscriptions. *N. H. Central R. R. Co.* v. *Johnson,* 30 N. H. 390 ; *Penobscot Railway Co.* v. *Dummer,* 40 Me. 172 ; *Littleton Manufacturing Co.* v. *Parker,* 14 N. H. 543 ; *Contoocook Valley R. Co.* v. *Barker,* 32 N. H. 363 ; *Som. & Ken. R. Co.* v. *Cushing,* 45 Me. 524.

*B. N. & S. S. Lapham,* for defendant.

The charge of the judge that the capital stock must all be subscribed before an action could be sustained for an assessment was correct. 1 Redfield on the Law of Railways, page 71 (5th edition) ; also pages 118, 187, 189, 190, and 191 ; *Shurtz* v. *The S. & T. Railway Co.* 9 Mich. 269 ; *The People* v. *The Troy House Co.* 44 Barb. S. C. 625 ; *Salem Mill Dam Co.* v. *Ropes,* 6 Pick. 23 ; also in 9 Pick. 187 ; *Central Turnpike Co.* v. *Valentine,* 10 Pick. 142 ; *Stoneham Branch Railway Co.* v. *Gould,* 2 Gray, 277 ; *Cabot & West Springfield Bridge* v. *Chapin,* 6 Cush. 50 ; *Worcester & Nashua Railway Co.* v. *Hinds,* 8 Cush. 110 ; *Lexington & West Cambridge R. Co.* v. *Chandler,* 13 Met. 311.

*May* 31, 1875.  POTTER, J.   This suit is brought on a subscription in the following terms : —

" Providence, June, 1873.   We, the subscribers, severally agree to and with the Warwick Railroad Company that we will take the number of shares of one hundred dollars ($100) each in the capital stock of said company, set opposite our respective names, under the provisions of its charter, and that we will pay for the same in such manner as the board of directors may, under the charter, direct."

The charter was granted in May, 1873, and amended in January, 1874.   It provided that the capital should not exceed two thousand shares of one hundred dollars each.

The persons named in the charter organized and accepted the charter and chose directors June, 1873.

The defendant subscribed in August, 1873, for twenty shares.

In March, 1874, the records show an informal meeting when they were advised by their counsel that the subscribers for stock were to be considered members.   After about $90,000 (of which $10,000 were conditional) were subscribed, the directors began to prepare for building.   An assessment was ordered March 23, 1874.

At a meeting of stockholders, April 4, 1874, the capital was fixed at $200,000.

A contract was made by the directors to build, May 9, 1874; and at the annual meeting, June 8, the subscription standing at the amount we have stated (defendant being present), this contract was ratified and a board of directors elected.

The defendant claims that he is not liable to pay his subscription until the whole capital is subscribed.

Was there any such condition to his subscription, either expressed or implied?

It is evident that the subscription contains no express conditions.

The agreement is to take a certain number of shares of $100 each in the capital stock of said company, . . . . under the provisions of its charter.

If the charter had provided for a definite capital, or if by general law provision had been made that the enterprise should not be commenced until some definite proportion or amount should

be subscribed (which is the case under the New York Plank Road Act), or if before subscription the capital had been fixed by vote or agreement, then it might well be held that the raising the whole amount was a condition of the subscription. And so, also, if the amount was named in the paper subscribed. And this, we think, is the doctrine implied in the majority of the cases to which we have been referred.

In *Contoocook Valley R. R.* v. *Barker*, 32 N. H. 363, the capital was fixed by the charter, and it was held that they could not assess until all was subscribed.

In *Littleton Manufacturing Company* v. *Parker*, 14 N. H. 543, the capital was fixed in the written agreement, and it was held that the whole must be subscribed.

In *Pitchford* v. *Davis*, 5 M. & W. 2, it was held that if the capital was fixed the subscriber was not liable, unless the amount fixed was subscribed, unless he knew of the proceedings and had acquiesced in them.

In *Wontner* v. *Shairp*, 4 C. B. 404, a capital was fixed in the prospectus. On the plaintiff's application shares were allotted to him, and he paid a deposit on them. The amount fixed was never subscribed, and he recovered back what he paid.

In *Cabot & W. Springfield Bridge* v. *Chapin et als.* 6 Cush. 50, the amount of capital was fixed by agreement.

But in the present case the reference to the charter settles nothing, for the reason that nothing except the limit was settled in the charter.

The subscribers had the right to affix a condition to their signatures, but they have not done so.

In the present case could they have organized as a corporation, and could they have been obliged to receive the defendant as a stockholder? There must be some sort of mutuality, and the answer to this question may tend to illustrate the .case. *Union Turnpike Co.* v. *Jenkins*, 1 Cai. R. 381; 1 Cai. Cas. 86.

In *Minor et al.* v. *Mechanics' Bank of Alexandria*, 1 Pet. 46, the United States Supreme Court, by Story, J., held that, in a case where the charter provided that the capital of a bank *may* consist of so much in amount, the raising the amount so limited was not a condition precedent to its organization and going legally into operation.

If it could do so, it would seem to follow that in such a case the subscriber would be bound for his subscription, and thus this case would be in harmony with the conclusion we have deduced from the other cases.

To the argument that, if the subscription did not prove sufficient, the amount subscribed would be lost, it seems to be a reasonable reply that the subscribers themselves would have the control of this matter as stockholders.

It is contended that the word *share* implies a proportion of a definite capital. This argument would be entitled to weight if the value of the shares was not affixed. In its present shape it is equivalent to a subscription of $2,000.

Upon the ground taken by the defendant, the subscribers could organize and make a contract, and then afterwards discharge themselves from legal liability by fixing the capital at an amount above the subscription. It is easy to see the great injustice that might be done in this way.

In this case it is alleged, and not denied, that the defendant was present at the annual meeting for election of directors, at which the contract to build the road was ratified. But we do not decide the case upon the point of estoppel, but upon the more general ground we have stated.                    *New trial granted.*