McLEESE, J.,
concurring in part and dissenting in part:
I agree that the trial court’s order denying attorney’s fees to Mr. Doe should be vacated. I write separately because my reasoning differs from the court’s reasoning in several significant respects.
The court interprets, the District’s Anti-SLAPP Act as presumptively entitling a successful movant to an award of attorney’s fees, unless. special circumstances would render such an award unjust. Although the issue is not free from doubt, I conclude that the Act is better read to give trial courts discretion whether to award attorney’s fees to successful movants.
I.
A. Statutory Language. ■
The Act provides that trial courts “may” award attorney’s fees to successful mov-ants. D.C.Code § 16-5504(a) (2015 Supp.). As the court acknowledges, “[u]se of the word ‘may’ in a statute ordinarily denotes discretion.” In re Langon, 663 A.2d. 1248, 1250 (D.C.1995) (interpreting word “may” as “manifest[ing] a legislative intent to confer upon the trial court considerable discretion”); see also, e.g., In re J.D.C., 594 A.2d 70, 75 (D.C.1991) (“[T]he word ‘may” ... is quintessentially permissive.”); Martin v. Franklin Capital Corp., 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (“The word ‘may' clearly connotes discretion.”)- (brackets and internal quotation marks omitted); Haig v. Agee, 453 U.S. 280, 294 n. 26, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (“‘[M]ay’ expressly recognizes substantial discretion.”). In-interpreting section 16-5504(a), we must give significant weight to 'the ordinary meaning of “may.” See, e.g., Zukerberg v. Distñct of Columbia Bd. of Elections & Ethics, 97 A.3d 1064, 1073 (D.C.2014) (“We construe the words of the statute according to their ordinary sense and with the meaning commonly attributed to them.”) (brackets, ellipses, and internal quotation *580 marks omitted); Flores v. United States, 37 A.3d 866, 868 (D.C.2011) (in absence of statutory definition, “we presumptively accord [statutory terms] their ordinary meaning in common usage, taking into account the- context in which they are employed”) (internal quotation marks omitted).
It is true that “may” sometimes can be interpreted to mean “shall” or “presumptively shall.” See, e.g,, In re Langon, 663 A.2d at 1250 (“[T]he meaning of the word ‘may’ in a particular statute depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer ,a discretionary power or to impose an imperative duty ....”) (internal quotation marks omitted); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (holding that civil-rights statute providing that court “may” award attorney’s, fees to prevailing plaintiff requires fee award “in all but special circumstances”). Because such interpretations are inconsistent with the ordinary meaning of “may,” however, we should not adopt them lightly. Rather,- we should do so only if we are confident that is what the legislature intended. Cf., e.g., Minor v. Mechanics’ Bank, 26 U.S. 46, 64, 1 Pet. 46, 7 L.Ed. 47 (1828) (Story, J.) (although “may” can be interpreted as “must,” “[t]he ordinary meaning of the language[] must be presumed to be intended, unless it would manifestly defeat the object of the provisions”). I lack confidence that the Council intended, by using the word “may,” to presumptively require a fee award to successful movants under the Act.
B. Statutory Structure.
As the court points out, a party who successfully opposes an Anti-SLAPP Act motion may be awarded fees only if the motion was “frivolous or ... solely intended to cause unnecessary delay.” D.C.Code § 16-5504(b). No such limitation is imposed on fee awards to successful movants. D.C.Code § 16-5504(a). I agree with the court that this difference “impliedly but clearly rejects” the view that fee awards to successful movants could properly be limited to cases in which the respondent’s position was frivolous or taken in bad faith. The court goes further, though, and infers from this difference “alone” that successful movants should presumptively be awarded fees. I see no basis for this further inference. Rather, the structure of section 16-5504 is entirely consistent with a conclusion that trial courts have discretion whether to award fees to successful mov-ants. The Second Circuit has reached the same conclusion under 15 U.S.C. § 3611 (2014), which has a structure quite similar to that of D.C.Code § 16-5504. See 305 E. 24th Owners Corp. v. Parman Co., 994 F.2d 94, 96 (2d Cir.1993) (per curiam) (under 15 U.S.C. § 3611(d), relief “may include” reasonable attorney’s fees, but defendant may recover fees only if plaintiffs action was “frivolous, malicious, or lacking in substantial merit”; court concludes that whether to award fees to prevailing plaintiff was “within the discretion of the court”); 605 Park Garage Assocs., LLC v. 605 Apartment Corp., 412 F.3d 304, 306 (2d Cir.2005) (per curiam) (affirming denial of fees to prevailing plaintiff under 15 U.S.C. § 3611(d) as within trial court’s discretion to award fees when doing so would be “fair, just and equitable”) (internal quotation marks, omitted).
The Second Circuit’s interpretation of 15 U.S.C. § 3611 contradicts the reasoning of the court in this case. Closer to home, this court recently analyzed the fee provision in the District of Columbia Freedom of Information Act, D.C.Code § 2-537(c) (2015 Supp.), which provides that prevailing plaintiffs “may” be awarded fees but *581 does not provide for an award of fees to prevailing defendants. Fraternal Order of Police, Metro. Police Dep’t Labor Comm. v. District of Columbia, 52 A.3d 822 (D.C.2012) (“FOP ”). Under the approach adopted by the court in the present case, the provision at issue in FOP should have been viewed as ordinarily calling for an award of fees to prevailing plaintiffs. The court in FOP made no reference to such a principle. To the contrary, the court held that both “the plain language of the statute” and the applicable legislative history demonstrated that “‘may' ha[d] its ordinary permissive meaning.” 52 A.3d at 827-28.
In support of the statement that fee provisions with a structure like that of section 16-5504 call in the ordinary course for an award of attorney’s fees to prevailing plaintiffs, the court cites as a “paradigmatic example” the fee provisions in federal civil-rights statutes. In reality, however, the Supreme Court concluded that prevailing plaintiffs should presumptively be awarded fees under the civil-rights statutes not because of the structure of the fee provisions in those statutes but rather because successful civil-rights plaintiffs act as private attorneys general, “vindicating a policy that Congress considered of the highest priority.” Newman v. Piggie Park Enters., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam); see also Christiansburg, 434 U.S. at 418, 98 S.Ct. 694 (fees should presumptively be awarded to prevailing plaintiff under civil-rights statute based on “two strong equitable considerations”: prevailing plaintiff “is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority” and “when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law”) (internal quotation marks omitted). As I explain later in this opinion, a successful Anti-SLAPP Act movant is not in these respects comparable to a plaintiff who has prevailed- in establishing that the defendant violated the federal civil-rights laws.
C. Legislative History.
The court concludes that “[njothing in the legislative history implies ... that the Council had in mind granting broad or loosely constrained discretion to the trial court to award or deny.attorney’s fees” to a successful movant. In my view, however, the legislative history on balance points in favor of the conclusion that the legislature meant “may” to be understood in its usual sense of conferring discretion. The strongest indications appear in the applicable committee report. We have found committee reports to be particularly persuasive evidence of legislative intent. Cf. e.g., Board of Trs. of Univ. of District of Columbia v. Joint Review Comm. on Educ. in Radiologic Tech., 114 A.3d 1279, 1285 (D.C.2015) (“[Tjhe report of a Senate or a House committee[ ] is accorded a good deal more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber.”) (internal quotation marks omitted).
The applicable committee report at one point refers to the Act as “[p]rovid[ing] for the awarding of fees” to successful mov-ants. D.C. Council, Report on Bill 18-893 at 8 (Nov. 18, 2010). That reference does not shed light on whether the Council intended such awards to be discretionary or presumptively mandatory. Two other statements in the committee report, however, speak more directly to that question, describing the Act as “allow[ingj” for an award of fees to successful movants. Id. at 4, 6. As the Supreme Court of Colorado observed when interpreting a constitutional amendment that “allowed’’ reasonable attorney’s fees to successful plaintiffs, “[djictionary definitions of the common us *582 age of ‘allow’ ... are synonymous with the word ‘permit.’ ” City of Wheat Ridge v. Cerveny, 913 P.2d 1110, 1114 (1996) (construing amendment to give trial courts discretion as to whether to award fees to prevailing plaintiffs). The. committee report on the Act thus indicates that the Council intended to give trial courts discretion as to whether to award fees to a successful movant. Moreover, the language of the committee report in no way suggests that the Council intended to make fee awards to prevailing movants presumptively mandatory.
In concluding that the legislative history of the Act supports a conclusion that fee awards to successful movants are presumptively mandatory, the court relies on two main points. First, the court relies on the Act’s lo.ng title, which lists among the Act’s purposes “to award the costs of litigation to the successful party on a special motion.” It is appropriate to consider a statute’s title when interpreting the statute. Mitchell v. United States, 64 A.3d 154, 156 (D.C.2013). Nevertheless, “[t]he significance of the title of the statute should not be exaggerated.” Id.; see also, e.g., Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528, 67 S.Ct. 1387, 91. L.Ed. 1646 (1947) (“Th[e] heading is but a short-hand reference to the general subject matter involved.... [HJeadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed- to be a reference guide or a synopsis. -Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles.’’). -The Act’s title refers to fee awards to successful movants but does not specify whether such fees must always be awarded or, if not, whether such awards should be presumptive or instead discretionary. ' Thus, the Act’s title appears to be a shorthand reference rather than a reliable indication of the precise meaning of the Act’s fee provision.
' Second, the court notes the committee report’s observation that the Act “closely mirrored” then-pending federal Anti-SLAPP legislation.[1] As the court acknowledges, however, the attorney’s fee provision in the. Act does not mirror the attorney’s fee provision in the pending federal legislation. To the contrary, the pending federal legislation used explicitly mandatory language, providing that the trial court “shall” award attorney’s fees to a successful movant. Citizen Participation Act, H.R. 4364, 111th Cong. § 8(a) (2009). It would be natural to infer that, by choosing explicitly permissive language, rather than the mandatory language of the pending federal legislation, the Council was intentionally rejecting the mandatory approach reflected in the pending federal legislation, in favor of a discretionary, ap *583 proach. Cf, e.g., Rea v. Federated Inv’rs, 627 F.3d 937, 940. (3d Cir.2010) (where later legislation was modeled on earlier legislation, “any differences between the two are a result of Congress acting intentionally and purposefully”); cf. generally Russello v. United States, 464 U.S. 16, 23-24, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“Where Congress includes particulai language in one section of a statute but omits it in another section of the same Act, it' is generally presumed that Congress' acts intentionally and purposely in the disparate inclusion or exclusion.”; “Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was ndt intended.”) (brackets omitted).
Finally, the court mentions in a footnote an email exchange between a Council staff member and a witness who testified in support of the Act. In my view, the court appropriately places little weight on that email exchange. Cf, e.g., In re Kline, 113 A.3d 202, 209 n. 3 (D.C.2015) (in interpreting court rule, court notes that letter from Department of Justice official to court rules committee “sheds no light on the thinking of the decision makers and, therefore, must be viewed with some skepticism .... Moreover, evidence which is of little probative value should not control over, the customary meaning of the words used in the rule and the comment.”); People v. Patterson, 72 Cal.App.4th 438, 84 Cal.Rptr.2d 870, 873 (1999) (declining to consider “private communications by a legislative staffer” in interpreting statute).
D. Analogy to Federal Civil-Rights Statutes.
As previously noted, the court suggests that the Act’s fee provision is analogous to the fee provisions in certain federal civil-rights statutes, which use discretionary language but have nevertheless been interpreted to presumptively require fee awards to prevailing plaintiffs. See Christiansburg, 434 U.S. at 417, 98 S.Ct. 694; Newman, 390 U.S. at 402, 88 S.Ct. 964; see also Tenants of 500 23rd St. N.W. v. District of Columbia Rental Hous. Comm’n, 617 A.2d 486, 487-88 (D.C.1992) (because they act as 'private attorneys general,” tenants prevailing in actions brought under Rental Housing Act are presumptively entitled to fee award under D.C.Code § 42-2592 (1990) (now codified at D.C.Code § 42-3509.02 (2012 Repl.)), which provides that court “may award” fees to prevailing party). I view this analogy as strained.
The Supreme Court has identified two primary rationales for presumptively requiring an award of- fees to' prevailing plaintiffs under the federal civil-rights statutes: (1) such plaintiffs serve as private attorneys general, and (2) the defendants in such cases violated federal law. Martin, 546 U.S. at 137,’ 126' S.Ct. 704 (trial courts have discretion as to whether to award' fees if case that' was initially removed from state to federal court is subsequently remanded back to state court pursuant to 28 U.S.C. § 1447(c) (2014); making fee award presumptive was unwarranted because successful litigant was not private attorney general and did not establish violation of federal law). We emphasized similar rationales when we held that prevailing tenants are presumptively entitled to a fee award under the Rental Housing Act. See Tenants of 500 23rd St., N.W., 617 A.2d at 488; Hampton Cts. Tenants’ Ass’n v. District of Columbia Rental Hous. Comm’n, 573 A.2d 10, 11-13 (D.C. 1990). I am doubtful that either rationale applies to motions filed under the Anti-SLAPP Act.
I do not deprecate the.free-speeeh interests that can be protected by a successful *584 motion under the Act. But it is not clear to me that successful movants are properly viewed as serving ■ as private attorneys general. There is no reference to that idea in the legislative history of the Act, and the court in the present case does not suggest that successful movants should be viewed- as private attorneys general. Moreover, a successful movant does not establish that the respondent violated any law, federal or local. Rather, such a mov-ant establishes only that the plaintiffs underlying lawsuit arises from an act.of advocacy on a matter of public interest and that the plaintiff was unable to make a pretrial 'showing of likely success on the merits. D.C.Code §§ 16-5502, -5503 (2015 Supp.).
. In my view, the procedural character of motions under the.Act tends to weaken the view that fee awards to successful movants should be presumptively mandatory. For example, imagine a libel defendant who is sued for speaking out on a matter of public concern, but who is unable to prevail in a pretrial Anti-SLAPP Act motion. Imagine further that the defendant nevertheless ultimately persuades a factfinder that the plaintiffs suit was not meritorious. Barring bad faith or other unusual circumstances, such a defendant has no right to attorney’s fees. It seems somewhat counterintuitive to construe the Act as presumptively mandating a fee award to defendants who can prevail pretrial, given that defendants who prevail after a trial will only be eligible for a fee award in unusual circumstances. The court responds that a plaintiff who successfully opposes an Anti-SLAPP Act motion in a cáse involving public advocacy “will have shown a likelihood that the speech was ‘malicious,’ so as to largely trump First Amendment concerns.” The court does not explain, however, why a plaintiffs simply making a pretrial showing of likely success on the merits “largely trump[s]” First Amendment concerns, even where the defendant ultimately persuades the jury that the speech at issue could not under the First Amendment be the basis for a libel award.
E. Anti-SLAPP Statutes in Other Jurisdictions,
The committee report concerning the Act noted that, as of January 2010, approximately twenty-eight other jurisdictions had adopted Anti-SLAPP statutes. Report at 3. The report also indicated that the Act “follows the model set forth in a number of other jurisdictions.” Id. at 1. On the issue of fee awards, however, the Act is worded quite differently from most other Anti-SLAPP statutes. Most Anti-SLAPP statutes explicitly make fee awards to successful movants mandatory, typically using the word “shall.” See, e.g., Cal.Civ.Proc.Code § 425.16(c) (West, Westlaw through ch. 1 2016 Reg. Sess. & ch. 1 2015-2016 2d Ex.Sess.); Fla. Stat. Ann. § 768.295(4) (West, Westlaw through 2015 1st Reg. Sess. & Special A Sess.); 735 Ill. Comp. Stat. Ann. § 110/25 (West, Westlaw through P.A. 99-500 2015 Reg. Sess.). Several Anti-SLAPP statutes, however, explicitly limit fee awards to specific circumstances; such as when the plaintiffs suit lacked a substantial basis. See, e.g., DeLCode Ann. tit. 10, § 8138(a)(1) (West, Westlaw through 80 Laws 2015, ch. 194); N.Y. Civ. Rights Law § 70-a(l)(a) (McKinney, Westlaw through chs. 1-589 2015). I have located only one Anti-SLAPP statute that uses language similar to the pertinent language in the fee provision of the District’s Anti-SLAPP Act. See Me.Rev.Stat. Ann. tit. 14, § 556 (West, Westlaw through 2015 1st Reg. Sess.) (court “may award” fees to successful movant); That statute has been interpreted by the Maine Supreme Court to give trial courts discretion as to whether to award fees, not to require that fees be *585 presumptively awarded. See Maietta Constr., Inc. v. Wainwright, 847 A.2d 1169, 1174-76 (2004) (holding that language of provision clearly confers discretion; court refuses to “infer a presumption of attorney fees in the face of a permissive statutory grant”). I note, however, that the decision in Maietta rests in part on Maine’s rejection, as a matter of local law, of the approach taken by the Supreme Court with respect to fee awards under federal civil-rights statutes. Id. at 1176. This court, by contrast, has followed the Supreme Court’s approach as a matter of local law. See, e.g., Tenants of 500 23rd St., N.W, 617 A.2d at 487-88.
I draw two principal conclusions from the approaches taken by other jurisdictions. First, legislatures have taken various views on whether, as a matter of policy, fee awards to successful Anti-SLAPP Act movants should be mandatory or available only in more limited circumstances. Second, when the Council enacted the fee provision of the District’s Anti-SLAPP Act, it had numerous models to consider. The Council did not adopt either of the two most common models: making fee awards mandatory or making them available only in specified circumstances. Rather, it picked language that, most naturally understood, charts a middle course, leaving to the discretion of trial judges whether to awards fees to successful Anti-SLAPP Act movants. Under well-settled principles of statutory interpretation, we should infer that the Council’s choice was intentional. See, e.g., Russello, 464 U.S. at 23, 104 S.Ct. 296; Rea, 627 F.3d at 940.
F. Conclusion.
In sum, I view the language of the Act’s fee provision as pointing in favor of the conclusion that trial judges have discretion whether to award fees to successful Anti-SLAPP Act movants. The other tools of statutory interpretation, considered as a whole, on balance point in the same direction. I therefore would so hold.
II.
Although I do not agree with the court 'that a fee award here was presumptively mandatory rather than discretionary, I nevertheless agree with the court that the trial court’s order denying a fee award should be vacated. Specifically, I agree with the court that the trial court placed undue emphasis on the conclusions that Ms. Burke’s suit was not frivolous or brought in bad faith. I also agree with the court that the trial court erred by placing weight on the fact that Mr. Doe was represented pro bono by an advocacy group. I assume arguendo that settlement negotiations might in some circumstances be admissible in determining whether to award attorney’s fees. But cf. Lively v. Flexible Packaging Ass’n, 930 A.2d 984, 994 (D.C.2007) (statement made during settlement negotiations not admissible in determining amount of attorney’s fees). Even on that assumption, I agree with the court’s suggestion that Ms. Burke’s settlement offers were too ambiguous to provide significant support for a decision to deny a fee award. In particular, Ms. Burke’s offers appear to have been contingent on (1) Mr. Doe’s waiver of any claim for fees and (2) an unspecified enforcement mechanism that might permit the suit to be unilaterally reinstated by Ms. Burke.
In some contexts, this court has adopted specific tests to govern a trial court’s discretionary determination whether to award fees. See, e.g., FOP, 52 A.3d at 828-32 (four-factor test for fee awards under D.C. Freedom of Information Act); Sanders v. International Soc’y for Performance Improvement, 740 A.2d 34, 35 n. 4 (D.C.1999) (adopting federal test governing fee awards under federal Employee Retire *586 ment Income Security Act); Frazier v. Franklin Inv. Co., 468 A.2d 1338, 1341 (D.C.1983) (twelve-factor test for fee awards under Truth in Lending Act); Ritz v. Ritz, 197 A.2d 155, 156-57 (D.C.1964) (non-exhaustive list of factors applicable to fee awards in domestic-relations, cases). Neither this court nor any other of which I am aware has yet developed such a test applicable to fee requests submitted by successful Anti-SLAPP Act movants-. .The parties have, not briefed the question whether this court should adopt such a test and, if so, what that test should look like. I therefore would not be inclined to attempt to address, those questions in the first instance. Rather, I would simply vacate the trial court’s order denying a fee award and remand for a “reasoned exercise of the court[’s] discretion.” FOP, 52 A.3d at 828 (internal quotation marks omitted). I therefore respectfully concur in part and dissent in part.

. Mr. Doe interprets the committee report as stating that the fee-shifting provision of the Act mirrored fee-shifting provisions in othér federal statutes. I do not read the committee report that way. • Rather, although the committee report at one point refers imprecisely to thfe pending federal legislation as "federal law,” both references in the committee report in context, indicate that the Council was mirroring other Anti-SLAPP provisions, not fee-shifting provisions in previously enacted federal statutes. Report at 1 (Act "follows the model set forth in a number of other jurisdictions, and mirrors language found in federal law, by incorporating substantive rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP”), 4 (Act "closely mirrored the federal legislation introduced” in 2009).