Coker, &c.

*v.*

Wynne, Ex'or, &c.

(*Special Court of Appeals of Virginia, June, 1878.*)

[Virginia Law Journal, 1878, p. 374.]

### Confession of Judgments—Power of Attorney Not under Seal—Validity of.

A judgment confessed by an attorney in fact, who is not an attorney at law, under a power of attorney, not under seal, is valid.

### Same—Same—Same.

Although the power of attorney, gave authority to confess judgments in favor of three parties, and it was, in fact, only used to confess judgments in favor of two of the three named; the two judgments confessed are valid.

### Powers of Attorney—When Deed Necessary.

It is not necessary that the appointments of an attorney should be by deed, except to authorize the making of a deed.

### Confession of Judgment in Vacation—Powers of Court over.

A court of general jurisdiction has the power at the next term, after a confession of judgment in the clerk's office during the vacation, to set aside, amend or correct, such judgment by confession, for any defect or error therein; but after that term, it becomes a final judgment of the court, which cannot be questioned collaterally, but only by writ of error or other proceeding applicable to other judgments of the court.

The case is fully stated by Judge Wingfield in his opinion.

*Jones & Bouldin,* for the appellants.

*Mann & Stringfellow* and *Donnan,* for the appellee.

WINGFIELD, P., delivered the opinion of the court.

This was a suit brought by the appellee, W. G. Wynne, executor of Nancy Roberts, suing as well for himself as for all other creditors of Daniel Malone, deceased, against the administrators and the widow and heirs of the intestate, and the appellants, two of the creditors, for the purpose of having a settlement of the accounts of the administration and of marshalling the debts of the intestate, and a distribution and apportionment of his estate among his creditors, according to their priorities. The bill, *inter alia*, charges that the intestate, Daniel Malone, a short time before his death, gave a paper purporting to be a power of attorney in favor of the appellants, Coker and Crawford, to confess judgments in the clerk's office ; that the paper was not under seal, therefore not executed according to law, and that the judgments confessed under it were void, and gave no priority to the claims of the appellants over the debt due to the complainants.

In the progress of the cause, a commissioner of the court was directed to take an account of the estate of the intestate, real and personal, and of the fee simple and annual value thereof, and of the debts against the intestate. Upon the coming in of the report of the commissioner, the court decreed a sale of the real estate of the intestate, except the part of it that had been assigned in dower to his widow.

In the report of the commissioner, the debts due the appellant, Crawford, and the appellant, Coker, are reported as first in order, as judgment debts against the intestate in his lifetime, and are the only judgment debts reported against the estate. To this report the administrator of Malone, and the complainant, W. G. Wynne, executor of Nancy Roberts, deceased, excepted on the following terms : "Because the commissioner reported the debts due by Daniel Malone's estate to said Coker and Crawford

as judgments obtained against said Malone in his lifetime, and binding the land of said Malone ; whereas they insist that said judgments having been confessed by R. G. Malone, attorney in fact, as alleged, are void, because said R. G. Malone was not authorized by a power of attorney, under seal, to confess the same, and not being an attorney at law, could not make said confession in the clerk's office, without a power of attorney under seal.    And they further insist that even if the power under which the said Malone assumed to act is held valid, though not under seal, that the said pretended confessions are void, because the said attorney in fact did not pursue the authority granted him to confess judgments in behalf of the three parties for the three debts named in said power, but executed the same in behalf of two parties only.''    The paper, under authority of which the judgments were confessed, is in the following terms : ''Know all men by these presents, that I, Daniel Malone, of the county of Dinwiddie and state of Virginia, do hereby appoint and empower Robert G. Malone my lawful attorney, to appear at the clerk's office, in the county of Dinwiddie, and acknowledge and confess judgments on the following claims, to-wit : one to John J. Crawford for ($2,500) two thousand five hundred dollars, due 1st January, 1861, with three credits, one for five dollars 1st January, 1862, one for five dollars 1st of January, 1863, and one for fifty dollars 27th January, 1866.    One to C. W. Coker for four hundred and fifty-one dollars and eighty-eight cents, due on 22d March, 1861, with a credit of ten dollars 9th of May, 1867 ; and one to Wiley King's estate for five hundred dollars, with interest thereon from the day it was due, and to sign my name or do any other act necessary in the above cases, and his acts shall be as lawful and binding on me as if I were personally present.    Given under my hand this 9th April, 1868.

''DANIEL MALONE.''

And was acknowledged by Daniel Malone before a justice of the peace of Dinwiddie county on the day of its date, and the acknowledgment duly certified by the justice. On the same 9th of April, 1868, a writ was sued out of the clerk's office of Dinwiddie county court, against Daniel Malone and C. W. Coker, at the suit of John J. Crawford, in an action of debt of $2,500, with legal interest thereon from the 1st day of January, 1861, till paid, returnable to rules on the first Monday in May following, on which there was an endorsement of the service of the writ, dated the 9th of April, 1868, with a confession of judgment for the amount of the debt, and interest claimed in the writ, subject to the three credits mentioned in the power of attorney, and signed,

"R. G. MALONE,
"Attorney in fact for Daniel Malone.
"C. W. COKER."

And also a similar writ was sued out, at the same time, against the said Daniel Malone, at the suit of C. W. Coker, for the amount mentioned in the power of attorney as due to him, with a like endorsement of acknowledgment and confession of judgment for the amount of the latter debt, subject to the credit of ten dollars, signed by the said R. G. Malone, as attorney in fact for Daniel Malone. And on the 9th of May, 1868, the said R. G. Malone appeared in the clerk's office, and there, in the presence of each of the plaintiffs, and with their assent, respectively, and as attorney in fact for the said Daniel Malone, "under the authority of the said power of attorney, under the hand of the defendant, Daniel Malone," confessed judgments in each of said actions, upon which, judgments were formerly entered up for the debts due to them, respectively, as specified in the power of attorney and writs, subject to the credits above specified.

It was agreed between the parties, 1st. That R. G.

Malone, the attorney in fact for Daniel Malone, was not and never had been, an attorney at law, licensed to practise in the courts of this or any other state.

2d. That he was the son of Daniel Malone, the intestate, and 3d. That the said R. G. Malone, acting under the alleged power of attorney, did not confess or claim to confess judgments under said power in behalf of any other person except John J. Crawford and C. W. Coker. This and the power of attorney and copies of the writs and judgments above mentioned, was all the evidence in the cause in relation to the judgments. And the cause coming on to be heard upon this evidence, the court expressed its opinion, "That the power of attorney from Daniel Malone to R. G. Malone, his attorney in fact, who, it was admitted, was not an attorney at law, was inoperative and insufficient to authorize the judgments confessed in the clerk's office by said R. G. Malone in favor of said John J. Crawford and C. W. Coker. First, because it appeared that the said power of attorney was not under the seal of the said Daniel Malone, and 2d. Because it appeared that the said power of attorney was executed and given by said Daniel Malone to said R. G. Malone to confess judgments in favor of John J. Crawford, C. W. Coker, and Wiley King's estate, and that it was executed in favor of Crawford and Coker only, and never executed as to King's estate, the reason of the omission being in no manner explained;" declared the judgments void; sustained the exception to the report of the commissioner, and decreed that in distributing the proceeds of the real estate of the intestate among his creditors, that the appellants were not entitled to any judgment lien against the lands of the intestate, and should not have any preference or priority over the other simple contract creditors of the decedent in the distribution of the proceeds of its sale. From this decree the appellants obtained the appeal which now brings up the case for review here.

It is settled by the case of "The Insurance Company of the Valley of Virginia v. Bailey's administrator," 16 Grattan 363, that a judgment may be confessed in the office by an attorney in fact, and that the attorney need not be an attorney at law. So that the questions now to be decided in this case are, whether or not it is necessary for the authority under which the attorney acts, to be under seal, and if not, whether or not the attorney in this case has pursued the power under which he acted.

In England, sealing of instruments of writing was not in use before the Norman conquest, but the method of identifying all written contracts was by the subscribing of the names of such as could write, and whether they could write or not, to affix the sign of the cross. After the conquest, the Normans (who, although brave were an illiterate people), used the practice of sealing instruments of writing to identify them, and at the conquest, they brought over and introduced this custom in England ; and after that, deeds and other written instruments were authenticated by the seal of the party without signature, and this continued to be so until the statute of 29th Charles 2d (which revived the Saxon custom), and required all grants of land as well as some other kind of deeds, to be signed by the grantor.

After the conquest, every nobleman and knight, and many of the freemen, had their distinctive seals, and every deed was authenticated and verified by the impression of it on wax attached to the instrument ; and when he had no distinctive seal, it was verified by the impression of the tooth of the party on the wax ; and if a question arose as to the *factum* of the deed, it was determined by the application of the seal or the tooth to the impression on the wax, and its genuineness was determined by the fact whether or not the impression corresponded to the seal or the tooth. The object of the seal, therefore, was to identify the writing at a time when,

in consequence of the general want of learning, and the inability of the masses to write, it could not be done by the signatures of the party, and this custom, for technical reasons, in relation to many instruments, has continued, although the reason for it has ceased long ago—for instance, a conveyance of land or other deed can only be by an instrument under hand and seal. Yet the actual sealing is done away with and become obsolete, and a scroll is substituted in the place of a seal, although it is of no sort of use or effect in identifying the instrument, as was anciently the purpose of annexing the seal of the party ; and for the same technical reason it is yet held, that an authority to an agent or attorney to execute a deed can only be granted by an instrument under seal. On a plea of *non est factum*, the scroll is of no sort of use in verifying the instrument, but in the absence of a subscribing witness, it is always authenticated and identified by proof of the handwriting. But it is argued that it is necessary, in order to make this act of the confession of judgment in the clerk's office by an attorney in fact who is not an attorney at law valid, that his authority to do so must be under a power under the hand and seal of the principal, and the reason given for it is, ''that such is the law.'' Now it is true, that if the law is plainly so written, the courts must follow it, although no other reason can be assigned for it. This brings up the question, is it true that such is the law ? The appellee's counsel cites 1st Robinson's Old Prac. 268, to show that a defendant, without having an attorney at law, or being present in court, may confess a judgment, and the author says that ''this is effected by a power of attorney under the hand and seal of the defendant, whereby he constitutes some particular person his attorney to make the confession.'' This power of attorney states the style of the suit, the name of the court in which it is depending, and the amount for which the judgment is to be confessed, ''and upon its being produced and proved, the

confession is entered accordingly." No doubt it is common, in making a power of attorney, for it to be under the hand and seal of the party making it, but this is not necessary except in cases where, for technical reasons, it is necessary for the attorney to make a deed in the name of his principal, in which case the power must be by an authority commensurate with and of equal dignity with the instrument to be made by the attorney or agent. But upon the maxim, *"qui facit per alium, facit per se,"* a man may do any act by another that he can do by himself, unless it be something which he is obliged to do in person, and he may make an agent or attorney by writing under his hand, and in many cases by mere verbal appointment, to do any act for him that he could do himself without a sealed instrument. A power of attorney is nothing more than the transfer of authority of one man to another to do the particular thing mentioned in it in the manner prescribed in the writing, for and on behalf of the principal, as his agent or attorney, and as the concurrence or assent of his mind to the thing to be done appears by the writing appointing the attorney or agent to act for him, there can be necessity for his personal presence at the execution of the act to be done, which may be as well performed by another person delegated for the purpose.

But it is not necessary that the appointment of an attorney should be by deed, except to authorize the making of a deed ("Commonwealth v. Griffith," 2 Pick. 11; "Cooper v. Rankin," 5 Bin. 613; "Gordon v. Buckley," 14 Serg't & R. 321; "Plummer v. Russell," 4 Bibb. 174; "Spear v. Ladd," 11 Mass. 94 ; Northampton Bank v. Pessoon, Id. 288; "Minor v. Mechanics' Bank of Washington," 1 Peters 46; "Fletcher v. United States Bank," 8 Wheat. 357), and although Mr. Robinson says a power of authority to confess a judgment is under hand and seal (which was, no doubt, the most usual). Yet it is not, nor does he say that it is, necessarily indispensable, that it should be under seal—in-

deed, he. shows that a practice of entering up a confession
of judgment* in court on a note in writing attested by a wit-
ness, had long prevailed ; and that in early times there was
a statute in Virginia authorizing the confession of judgment
by writing under the hand of the party, the debtor (1 Hen.
Stat. at Large, 304, 447); and in England the common, and,
I believe, universal, custom is, for judgments to be confessed
by an attorney under what is called a warrant of appoint-
ment, which is a writing under the hand of the party ap-
pointing him, and the probable reason why this mode was
adopted there instead of by a power under seal, was that it
was equally as effectual, and was subject to a less stamp
duty than if it were a deed under seal.

I can see no reason why the authority should be under
seal.   The authority of the agent or attorney is ascertained
and determined by the terms of the writing and not by the
seal, and in this case I cannot perceive why every purpose
of the parties was not as well subserved, and all their rights
as fully guarded and protected as if the power of attorney
had been under seal.   The names of the parties in whose favor
it was to be had, the amount of the judgment to be confessed,
and the court in which it was to be made, are as fully and
clearly defined as if it had been under seal; and the principle
is as fully protected against any departure from, or violation
of, the terms of the grant as if it had been a deed, and as the
court at the next term had the power to correct any error
made in entering the judgment, every necessary guard was
thrown around the respective parties, as if it had been under
seal.   I can see no reason to question the propriety or
validity of the judgments.

But is it argued that although judgments may be confessed
in England by an attorney under a warrant, not under a seal,
that this can only be done by an attorney at law admitted to
practice in the courts, and it is contended, that while this

judgment might, therefore, have been good if the agent had also been an attorney at law, yet, being confessed by an attorney who was a layman, it is bad.

It is a sufficient answer to this to say that by statute in England every person is prohibited from appearing there in any case in court whatsoever, except those qualified as prescribed by the statute, and that when he does appear as attorney to confess a judgment, he does it under, and by virtue of the authority conferred on him by the warrant of appointment, and without that he would have no power to do so.

But here there is no such restriction, and a party may make any confession of judgment by an agent, or attorney in fact, that he could make in person.

I am, moreover, of opinion, that as the judgment was in a court having a general jurisdiction over the subject matter of the suit, with power to set aside, amend or correct it, at the next term, for any defect or error in it, that after that time it became a final judgment of the court, to be questioned only by appeal or other proceedings applicable to other judgments of the court, and cannot be questioned in this collateral proceeding; and if there was a defective execution by the attorney, of the power vested in him by the power of attorney, so as in any way to affect the judgment, that court was the proper court in which to make the objection, and as it had a general jurisdiction to enter a judgment by the confession of the defendant, and as it has entered one upon what it has decided was a proper confession, no other court can inquire into the correctness of its action in any collateral proceeding.

But if we could inquire into it, I do not think there could be any objection to the judgments of the appellants, because the attorney did not, at the same time, confess one in favor of King's estate. The powers granted to confess the several judgments were in their nature distributive, and necessarily

had to be severally and distinctly performed, as each judgment had to be entered separately in favor of a different plaintiff, for a different and definite sum specified for each, and was, as to the several parties in whose favor he was, to confess a judgment, the same thing as if he had had a separate power of attorney as to that debt, and the several confessions in favor of Crawford and Coker are in no wise affected by his neglect to confess one in favor of King's estate.

I am of opinion to reverse the decree of the circuit court, and remand the case with directions to apply the proceeds of the sale of the real estate of the intestate, first to the payment of the judgments of the appellants.

BARTON and McLAUGHLIN, J.'s, concurred.

Decree reversed.